# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: October 25, 2022

| | | |
|---|---|---|
| * * * * * * * * * * * * | | |
| ROY BRISTOW, | * | |
| | * | |
| Petitioner, | * | No. 19-457V |
| | * | |
| v. | * | Special Master Gowen |
| | * | |
| SECRETARY OF HEALTH | * | Attorneys' Fees and Costs; |
| AND HUMAN SERVICES, | * | Interim request. |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * | | |

*Michael Baseluos*, Baseluos Law Firm, PLLC, San Antonio, TX, for petitioner.
*Kyle Pozza*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]

On September 9, 2022, Roy Bristow ("petitioner') filed a motion for interim attorneys' fees and costs. Petitioner ("Pet.") Interim Fee Motion ("Int. Fee Mot.") (ECF No. 95). For the reasons set forth below, I hereby **GRANT** petitioner's motion, and find an award of **$103,684.40** in attorneys' fees and costs to be reasonable.

### I.   Procedural History

Petitioner filed his petitioner in the National Vaccine Injury Compensation Program[2] ("the program") on March 28, 2019. Petition (ECF No. 1). Petitioner alleged that he suffered from chronic inflammatory demyelinating polyneuropathy ("CIDP") as a result of an influenza ("flu") vaccination which he received on as a result of receiving the influenza ("flu") vaccine on October 16, 2017. *Id.*

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), because this opinion contains a reasoned explanation for the action in this case, I am required to post it on the website of the United States Court of Federal Claims. The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. This means the opinion will be available to anyone with access to the Internet. Before the opinion is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). "An objecting party must provide the court with a proposed redacted version of the [opinion]." *Id.* If neither party files a motion for redaction within 14 days, the opinion will be posted on the court's website without any changes. *Id.*

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to 34 (2012) ("Vaccine Act" or "the Act"). Hereinafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

The petition was initially assigned to the Chief Special Master's Special Processing Unit ("SPU") docket. On May 5, 2020, respondent filed his report pursuant to Vaccine Rule 4(c), in which respondent averred that the claim was not appropriate for compensation under the terms of the Vaccine Act. Resp. Report (ECF No. 21) at 1. More specifically, respondent averred that the Vaccine Injury Table does not list CIDP after the flu vaccination (within any time period) and that petitioner has not submitted preponderant evidence that the flu vaccination was the cause in fact of his injury (either the initial onset or significant aggravation thereof). *Id.* at 1, 10-15. Respondent also averred that certain features of petitioner's presentation are not consistent with a diagnosis of CIDP and are instead more consistent with injury to the spinal cord. *Id.* at 13.

On July 8, 2020, a status conference was held to discuss the Rule 4(c) report. Scheduling Order (ECF No. 24). Respondent's counsel Mr. Kyle Pozza proposed that petitioner obtain an expert report. *Id.* Petitioner's previous counsel Ms. Toale agreed. *Id.* Following the status conference, the Chief Special Master determined that the claim should be transferred out of the SPU. *Id.* On July 10, 2020, the claim was randomly assigned to my docket. Notice of Reassignment (ECF No. 26). I ordered petitioner to file an expert report addressing the issues raised in the Rule 4(c) report within 60 days, by September 11, 2020. Scheduling Order filed July 13, 2020 (Non-PDF). On September 11, 2020, petitioner advised that he was seeking new counsel. Petitioner's Motion (ECF No. 28). On January 19, 2021, Mr. Michael Baseluos filed a motion to substitute as petitioner's attorney, which was granted. Pet. Mot. (ECF No. 34). Mr. Baseluos has since filed additional evidence.( ECF Nos. 35-37).

Mr. Baseluos filed a supplemental petition and a request for a status conference on January 21, 2021. (ECF Nos. 36-37). A Decision on Interim Attorneys' Fees and Costs for previous counsel Anne C. Toale was decided on March 19, 2021. (ECF No. 40). On May 15, 2021, petitioner filed expert reports and accompanying medical literature from Dr. Jeret and Dr. Akbari. Pet. Exs. 34-35 (ECF No. 52-59). Respondent was ordered to submit a responsive expert report, but instead filed a status report on September 14, 2021, indicating his willingness to enter into settlement discussions. (ECF No. 63). Mr. Baseluos submitted updated treatment records and information about future medical care regarding lifelong IVIG treatment. (ECF Nos. 65-67).

On January 31, 2022, petitioner filed a Life Care Plan Report by Misty Coffman. Pet. Ex. 41 (ECF No. 71). Respondent filed a status report on March 3, 2022, advising the court that he will be retaining a life care planner to review petitioner's report and interview petitioner. (ECF No. 73). Petitioner filed a motion for leave to file for a Ruling on the Record on April 4, 2022. (ECF No. 74). A status conference was held on April 21, 2022, in which I ordered petitioner to file all necessary documents to respondent in order for them to complete the responsive life care plan and for the parties to arrange a zoom call with petitioner and respondent's life care planner. (ECF No. 77). On May 6, 2022, petitioner filed an updated statement on damages and information regarding petitioner's health insurance policy. (ECF Nos. 78-79).

On May 6, 2022, petitioner filed a motion to amend the schedule and have the life care plan interview be recorded. (ECF No. 80). The same day I directed the respondent's life care planner to conduct the recorded interview within the next two weeks, and file a status report within 45 days on the progress of settlement. NON-PDF Order, May 6, 2022, the schedule and requested that the life care planner interview not be recorded, and requested a status conference.

(ECF No. 81). A status conference was held on May 18, 2022, and the next day I granted respondent's motion for reconsideration and ordered the parties to arrange an unrecorded life care planner interview, and directed the parties submit a supplemental statement of completion when it was completed. NON-PDF Scheduling Order, May 19, 2022 (ECF No. 83).

Petitioner filed a "Day in the Life Video," on June 21, 2022. Pet. Ex. 45 (ECF No. 84). Petitioner filed a statement of completion on June 21, 2022, and I ordered respondent to forward the life care plan to petitioner, file the responsive life care plan, and submit a status report indicating completion. *See* Statement of Completion, June 21, 2022 (ECF No. 85); NON-PDF Scheduling Order, June 22, 2022. On July 1, 2022, petitioner filed an updated life care plan from Ms. Coffman with supplemental exhibits. Pet. Ex. 46 (ECF No. 86). On July 2, 2022, petitioner filed a status report indicating that there is no income loss claim in the case and that he was working to resolve outstanding questions regarding petitioner's out of pocket expenses. (ECF No. 87).

On July 2, 2022, petitioner file a motion for leave to file interim motion for attorneys' fees and costs. (ECF NO. 88). I granted that order on July 19, 2022. (ECF No. 89). Petitioner filed additional medical records on July 23, 2022. Pet. Exs. 47-48 (ECF No. 90). On August 4, 2022, respondent filed a status report indicating that respondent's life care planner provided a draft report and he anticipated respondent to petitioner's demand within the next thirty days. (ECF No. 91). The same day, petitioner filed a responsive status report informing the court that petitioner has not been provided with respondent's life care plan. (ECF No. 92). The same day, petitioner also filed a motion to compel the Court for dual track status. (ECF No. 93). On August 12, 2022, I granted petitioner's motion for compel and ordered respondent to provide an offer to petitioner and if the case could not be settled a status conference would be convened. (ECF NO. 94).

On September 9, 2022, petitioner filed the instant motion, requesting a total of $109,979.40, comprised of $49,757.00 in in interim attorneys' fees, and $60,222.40 in attorneys' costs. Pet. Int. Mot. at 10. Respondent filed a response to petitioner's motion on October 13, 2022, stating that "In this case, respondent defers to the special master to determine whether or not petitioner has met the legal standard for an interim fees and costs award," and that "Respondent also defers to the special master regarding whether the statutory requirements for an award of attorney's fees and costs are met in this case." Resp. Response at 2 (ECF No. 99). Respondent requested that the Court exercise its discretion and determine a reasonable award for attorneys' fees and costs. *Id.* at 2-3.

The matter is now ripe for adjudication.

## II.     Entitlement on Attorneys' Fees and Costs

### A.  Legal Standard

The Vaccine Act provides that reasonable attorney's fees and costs "shall be awarded" for a petition that results in compensation. §15(e)(1)(A)-(B). Even when compensation is not awarded, reasonable attorneys' fees and costs "may" be awarded "if the special master or court

3

determines that the petition was brought in good faith and there was a reasonable basis for which the claim was brought." § 15(e)(1).

The Federal Circuit has reasoned that in formulating this standard, Congress intended "to ensure that vaccine injury claimants have readily available a competent bar to prosecute their claims." *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012). The Federal Circuit has explained that reasonable basis analysis is limited to objective factors. The Court has also explained that "the quantum of objective evidence needed to establish reasonable basis for a claim, including causation is lower than the preponderant evidence standard required to prove entitlement to compensation, but more than a mere scintilla" of evidence. *James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021); *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. Aug. 19, 2020).

The petitioner has supported his claim with affidavits, reports from a neurologist and an immunologist as well as a life care plan in aid of damage discussions. His experts have set forth detailed opinions regarding diagnosis, causation and damages that are well grounded in the medical facts of the case. Respondent has not meaningfully contested entitlement. The case has been prolonged by lengthy settlement discussions. I have concluded upon review of the above that there is no doubt that the case has been brought in good faith and with a reasonable basis. In considering an interim fee request for the attorney and experts I consider whether the case has been brought with a reasonable basis considering that the ultimate decision on entitlement to compensation has not yet been made.

### B. Interim Awards

The Vaccine Act permits interim attorneys' fees and costs. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008); *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372 (Fed. Cir. 2010). In *Shaw,* the Federal Circuit held that it was proper to grant an interim award when "the claimant establishes that the cost of litigation has imposed an undue hardship." 609 F.3d at 1375. In *Avera,* the Federal Circuit stated that "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." 515 F.3d at 1352. I generally defer ruling on an interim fee application if: the case has been pending for less than 1.5 years (measured from the date of filing); the amount of fees requested is less than $30,000; and/ or the aggregate amount of expert costs is less than $15,000. If any one of these conditions exists, I generally defer ruling until these thresholds are met or until an entitlement hearing has occurred. These are, however, only informal requirements, and there are ultimately many factors bearing on the merit of an interim fee application. I evaluate each one on its own merits.

In this case, petitioner is requesting a total of $109,979.40 in attorneys' fees and costs, which is above the threshold amount described above. Petitioner took over this case in December 2020, engaged experts and a life care planner and also produced a day in the life film. Finally, this case has been pending for over three years in the program. As such, I find that an award of interim attorneys' fees and costs are appropriate at this time.

### III. Reasonable Attorneys' Fees and Costs

#### A. Legal Standard

As stated above, the Vaccine Act only authorizes "reasonable" attorneys' fees and costs. The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera*, 515 F.3d at 1349. Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347-58 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. *Id.* at 1348. Although not explicitly stated in the statute, the requirement that only reasonable amounts be awarded applies to costs as well as to fees. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994).

Special masters have "wide discretion in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991). They may look to their experience and judgment to reduce the number of hours billed to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). A line-by-line evaluation of the billing records is not required. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (1991), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993 (per curiam).

The petitioner "bea[rs] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable. *Wasson*, 24 Cl. Ct. at 484. Adequate proof of the claimed fees and costs should be presented when the motion is filed. *Id.* at 484, n. 1. Counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

#### B. Hourly Rates

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera,* 515 F. 3d at 1348 (quoting *Blum,* 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriquez v. Sec'y of Health & Hum. Servs.,* 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F.3d at 1349).

Further, the Office of Special Masters has adopted the framework developed in *McCulloch* for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.,* No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). Under *McCulloch,* the following factors are "to be considered in determining an appropriate billing rate: the prevailing rate for comparable legal work in the forum of Washington, D.C.; the prevailing rate for cases in the Vaccine Program; the experience of the attorneys in the Vaccine Program; the overall legal experience of the attorneys

5

in the case; and the quality of work performed in vaccine cases." *McCulloch,* 2015 WL 5634323, at 60-61.

Here, petitioner is requesting that his attorney, Michael Baseluos, be reimbursed for work performed on his behalf from 2020-2022 for a total of 142.40 hours . Specifically, petitioner requests that Mr. Baseluos be reimbursed at a rate of $335.00/hr for work performed in 2020, $350.00/hr for work performed in 2021, and $375.00/hr for work performed in 2022. Pet. Int. Mot. at 2-3. Mr. Baseluos additionally included 3.6 hours at the rate of $150.00/hr, and 1.1 hours at the rate of $175.00/hr, for a total of 4.7 hours for paralegal tasks related to the review and preparation of exhibits. These hourly rates are consistent with rates that Mr. Baseluos has previously been awarded for his Vaccine Program work, and I therefore find them reasonable. *See Dorso v. Sec'y of Health & Hum. Servs.,* No. 19-699V, 2022 WL 4518394, at *2 (Fed. Cl. Sept. 13, 2022); Martinez v. Sec'y of Health & Hum. Servs., No. 18-1352V, 2022 WL 4693287, at *2 (Fed. Cl. Sept. 8, 2022). As such, the rates requested by petitioner will be awarded without adjustment.

### C. Hours Expended

As previously noted, a line-by-line evaluation of the fee application is not required and will not be performed. *Wasson*, 24 Cl. Ct. at 484. Rather, I may rely on my experience to evaluate the reasonableness of hours expended. *Id.* Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests …. [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." *Saxton*, 3 F.3d at 1521.

Petitioner's counsel provided a breakdown of hours billed. Pet. Int. Mot. Ex. A. Based on the invoice, Mr. Baseluos performed a total of 142.40 hours from 2020-2022 on petitioner's case, including 4.7 hours of work classified as paralegal work in 2021 and 2022 and billed at paralegal rate. Upon review of the invoice submitted with the petitioner's interim fee application, and my knowledge of the proceedings in this case to date, the number of hours expended appear to be reasonable and adequately documented. Therefore, they will be awarded without adjustment.

### D. Costs

Like attorneys' fees, costs incurred-by counsel or petitioners themselves-must be reasonable to be reimbursed by the Program. *Perreira*, 27 Fed. Cl. Ct. 29, 34.

Petitioner requests that his attorney be awarded $60,222.40 in costs. Pet. Int. Mot. at 10. These costs include postage, mailing, video fee,, and expert costs. *Id*. at 23-24. The bulk of petitioner's costs, $59,420.00 is for and the hourly costs associated with Dr. Omid Akbari writing one expert report, Dr. Joseph Jeret writing one expert report, and a two life care plans from Misty Coffman. *Id*. at 2. The costs are described in sufficient detail and are companied by the relevant invoices supporting the amount of money requested.

### i. Dr. Omid Akbari

6

Petitioner requests a total of $31,680.00 for Dr. Akbari. Pet. Int. Mot. at 10. His requested rate for all work performed included review of medical history, drafting of letters, telephone conferences, emails, and study of medical literature is $550.00 per hour. Dr. Akbari is a professor of Allergy and Immunology in the Department of Molecular Microbiology and Immunology at the Keck School of Medicine at the University of Southern California. Pet. Ex. 33. He is an active researcher in the field of immune tolerance in triggering autoimmune disease. *Id*.

Dr. Akbari has been consistently awarded a rate of $500.00/hr by other special masters in the program. *See Reinhardt v. Sec'y of Health & Hum. Servs.,* No. 17-1257V, 2021 WL 2373818 (Fed. Cl. Apr. 22, 2021); *Hernandez v. Sec'y of Health & Hum. Servs.*, No. 16-1508V, 2018 WL 4391060 (Fed. Cl. Spec. Mstr. Aug. 20, 2018); Shinskey v. Sec'y of Health & Hum. Servs., No. 15-713V, 2019 WL 2064558 (Fed. Cl. Spec. Mstr. May 9, 2019); Sheppard v. Sec'y of Health & Hum. Servs., No. 17-819V, 2020 WL 1027958 (Fed. Cl. Spec. Mstr. Feb. 20, 2020); Bisceglia v. Sec'y of Health & Hum. Servs., No. 19-91V, 2020 WL 6146101 (Fed. Cl. Spec. Mstr. Sep. 20, 2020); Robinson v. Sec'y of Health & Hum. Servs., No. 15-967V, 2018 WL 5629850 (Fed. Cl. Spec. Mstr. Sep. 12, 2018). I find that $500.00 per hour, as has been consistently awarded to Dr. Akbari to be an appropriate hourly rate. While Dr. Akbari provided one expert report, he billed for 57.6 hours, this represents an unusually large expenditure of time for a case that has not yet had a hearing. Given the issues in this case, I am inclined to award the hours requested, but I caution Dr. Akbari and counsel to endeavor to reduce the number of hours billed henceforth. I do, however, observe that Dr. Akbari did provide very detailed records of the time spent on this case.

Therefore, the amount to be awarded for Dr. Akbari will be reduced to $28,800.00 to conform to the $500.00 per hour billing rate.

### ii. Dr. Joseph Jeret

Petitioner requests a total of $15,950.00 for Dr. Jeret. Pet. Int. Mot. at 10. His requested rate for all work performed included review of medical history and imaging, discussion and emails with Mr. Baseluos, and medical literature review is $550.00 per hour. Pet. Int. Mot. Ex. H. Dr. Jeret is a Neurologist in New York and is fellowship-trained in neurodiagnostic studies. Pet. Ex. 32 at 1. Dr. Jeret has provided care to over 20,000 patients and has published over 70 peer-reviewed papers, he has also been awarded fellowship status in the American Academy of Neurology. *Id*.

Dr. Jeret has not previously been awarded fees in the Vaccine Program. Given his extensive thirty year career in Neurology and neurodiagnostic studies, and the quality of his report in this case, I find that he should be compensated at a rate similar to other neurologists of his qualifications and experience who have participated in this program at a rate of $500.00 per hour. Dr. Jeret billed for 29 hours, a reasonable amount of time for one expert report in a case that has not had a hearing. Therefore, the amount to be awarded for Dr. Jeret will be reduced to $14,500.00.

### iii. Ms. Misty Coffman

Petitioner requests a total of $11,790.00 for Ms. Coffman. Pet. Int. Mot. at 10. Ms. Coffman requested a rate of $300 per hour for all work performed including review of exhibits, discussions and emails with Mr. Baseluos, drafting of two life care plans, and a virtual clinical interview with petitioner. She billed for a total of 39.3 hours. Pet. Int. Mot. at 10 Ex. I. Ms. Coffman is Registered Nurse in Ohio, a Certified Medicare Set-aside Consultant, and a Certified Nurse Life Care Planner. Pet. Ex. 40.

Ms. Coffman has not been awarded expert fees in the Vaccine Program. The Vaccine Programs' reasonableness standards for attorneys' fees and costs apply equally to experts' fees and costs. The rate at which petitioner seeks reimbursement is on the high end of the amount that has been previously awarded to other life care planners in the program. Previous rates that have been awarded to experienced life care planners range from $125.00 per hour to $250.00 per hour. *see J.T. v. Sec'y of Health & Human Servs.,* No. 12-618V, 2018 WL 4623163 (Fed. Cl. Spec. Mstr. April 20, 2018) (approving a rate of $250.00 for work performed by a registered nurse and experienced life care planner); *See Rojas v. Sec'y of Health & Human Servs.*, No. 14-1220V, 2017 WL 6032300 (Fed. Cl. Spec. Mstr. Apr. 5, 2017) (approving a rate of $225.00 for work performed by a Life Care Planner); *see Taylor v. Sec'y of Health & Hum. Servs.,* No. 15-1346V, 2019 WL 1376039, at *4 (Fed. Cl. Mar. 1, 2019) (approving a rate of $225.00 for work performed by a Life Care Planner). Given Ms. Coffman's qualifications as a Registered Nurse, Certified Medicare Set-aside Consultant, and Certified Nurse Life Care Planner, her hourly rate will be adjusted to $250.00/hr at the higher end of the rates accepted in the Vaccine Program. Pet. Ex. 40 at 1. Therefore, the amount to be awarded to Ms. Coffman will be reduced to $250.00/hour for a total of $9,825.00.

### E. Conclusion

In accordance with the above, petitioner's motion for interim attorneys' fees and costs is **GRANTED.** Accordingly, I award the following:

| | |
|---|---|
| Attorneys' Fees Requested: | $49,757.00 |
| Reduction of Attorneys' Fees: | $0 |
| **Attorneys' Fees Awarded:** | **$49,757.00** |
| | |
| Attorneys' Costs (excluding Expert Retainers) Requested: | $802.40 |
| Reduction in Attorneys' Costs: | -$0 |
| **Attorneys' Costs Awarded:** | **$802.40** |
| | |
| Dr. Akbari Requested: | $31,680.00 |
| Dr. Akbari Reduction: | -$2,880.00 |
| **Dr. Akbari Awarded:** | **$28,800.00** |
| | |
| Dr. Jeret Requested: | $15,950.00 |
| Dr. Jeret Reduction: | -$1,450.00 |
| **Dr. Jeret Awarded:** | **$14,500.00** |

| | |
|---|---|
| Ms. Coffman Requested: | $11,790.00 |
| Ms. Coffman Reduction: | -$1,970.00 |
| **Ms. Coffman Awarded:** | **$9,825.00** |
| | |
| Total Attorneys' Costs Requested: | $60,222.40 |
| **Total Attorneys' Costs Awarded:** | **$53,927.40** |
| | |
| Total Attorneys' Fees and Costs Requested: | $109,979.40 |
| **Total Attorneys' Fees and Costs Awarded:** | **$103,684.40** |

1) **A lump sum in the amount of $103,684.40, representing reimbursement for *interim* attorneys' fees and costs, in the form of a check payable jointly to petitioner and his counsel.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court is directed to enter judgment forthwith.[3]

**IT IS SO ORDERED.**

**s/Thomas L. Gowen**
Thomas L. Gowen
Special Master

---

[3] Entry of judgment is expedited by each party's filing notice renouncing the right to seek review. Vaccine Rule 11(a).